**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

CARL BRAXTON TOOLE,            )
                              )
        Plaintiff(s),          )
                              )
vs.                           )        CV 97-N-1746-NE
                              )
BROWN & WILLIAMSON            )
TOBACCO CORPORATION,          )
                              )
        Defendant(s).          )

**Memorandum of Opinion**

## I. Introduction.

In this diversity action, the plaintiff,[1] Carl Braxton Toole ("Toole"), brings claims against the defendant, Brown & Williamson Tobacco Corporation ("Brown & Williamson"). Although it is difficult to decipher the specific claims contained in the plaintiff's civil complaint, Mr. Toole appears to allege that Brown & Williamson failed to warn of the alleged hazards of smoking its Bugler and Kite tobacco products. *See Complaint* at ¶¶ 11-15. No specific state or federal law is alleged to have been violated. Mr. Toole also generally alleges that Brown & Williamson violated his rights under the United States and Alabama Constitutions. *Id.* at ¶ 16.

This matter is presently before the court on the July 11, 1997, motion of defendant to dismiss the plaintiff's claims. The parties have briefed the motion and, upon due consideration, the motion will be granted.

---

[1] The plaintiff is an inmate in the Alabama prison system and filed this *pro se* action originally in Limestone County Circuit Court on June 12, 1997. Defendant Brown & Williamson timely removed this matter to the Northern District of Alabama on July 11, 1997.

## II.   Allegations of the Complaint.

Plaintiff's claims against Brown & Williamson arise out of his use of Brown &
Williamson's Bugler and Kite rolling tobacco, both of which are loose, "roll-your-own"
tobacco products.  The plaintiff avers that he smokes both Kite and Bugler tobacco
products, *Complaint* ¶ 4, and that he has smoked these products since May of 1990.  *Id.* ¶
5.  Mr. Toole alleges that he has suffered personal injuries as a result of using these
products, which he alleges are hazardous to his health.  *Id.* ¶¶ 6-10.  The plaintiff further
contends that Brown & Williamson should be held liable to him because Brown &
Williamson did "not warn Bugler and Kite smokers about the harm it [sic] can do to them,
or the addictiveness they can cause." *Id.* ¶ 11.  He alleges that "other cigarette smoking
tobacco carries a warning label, yet these cigarette products does [sic] not." *Id.* ¶ 14.  In
sum, and reading the complaint liberally and in the light most favorable to the plaintiff, he
is apparently claiming that he is entitled to relief because of the defendant's failure to either
comply with the Federal Cigarette Labeling and Advertising Act ("FCLAA"), 15 U.S.C. §
1331 *et seq.*, or, in the alternative, because the defendant breached its "duty to warn" under
common law principles by failing to print a warning on its product's packaging.

Finally, the plaintiff makes a general allegation that Brown & Williamson "violated
Plaintiffs [sic] Constitutional Rights pursuant to the United States Constitution and the
Alabama Constitution of 1901." *Id.* ¶ 16.

2

### III.   Standard for Motion to Dismiss.

For purposes of ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must take the allegations of the complaint as true and construe them in a manner most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts . . . which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  A complaint may be dismissed when the allegations demonstrate that the plaintiff does not have a claim. *Bruce v. Wade*, 537 F.2d 850, 852 (5th Cir. 1976);  *Hepperle v. Johnston,* 544 F.2d 201 (5th Cir. 1976).

### IV.   Discussion.

#### A.   Failure to Warn Claim.

##### 1.   The FCLAA's Scope.

The plaintiff contends that Brown & Williamson has violated the law by failing to warn him of the alleged hazards of smoking its Kite and Bugler loose tobacco products. *See Complaint* ¶ 11.  In support of its motion to dismiss, the defendant asserts that plaintiff's failure to warn allegations do not state a claim upon which relief may be granted and, therefore, should be dismissed. *Memorandum Brief in Support of Brown & Williamson Tobacco Corporation's Motion to Dismiss* at 3.

The defendant initially argues that the FCLAA will serve to bar plaintiff's failure to warn claims because the FCLAA requires the labeling of only packages of cigarettes, not loose tobacco products like Bugler and Kite. *See id.* at 2-3.  The FCLAA defines a "cigarette" as

3

(A) any roll of tobacco wrapped in paper or in any substance not containing tobacco, and

(B) any roll of tobacco wrapped in any substance containing tobacco which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a cigarette described in subparagraph (A).

*Id.* § 1332(1). This definition makes clear that the statute's labeling requirement does not apply to loose tobacco products such as Bugler and Kite[2] and, as a result, defendant's motion to dismiss will be granted with regard to this aspect of the warning/labeling claim. *See also Howard v. Brown & Williamson Tobacco Corp., et al.*, CV-94-A-1239-N, slip op. at 4 (M.D. Ala. Feb. 7, 1995) (holding that Bugler and Kite loose tobacco products are not "cigarettes" under the FCLAA and that defendant was not required to place a warning label on the tobacco packaging).

### 2.     Federal Preemption.

While Brown & Williamson appropriately argues that loose tobacco products are not covered by the FCLAA's labeling requirement, and that Mr. Toole cannot state a claim thereunder, it also asserts that the plaintiff's state law failure to warn claims are preempted by the Act. *See Memorandum Brief in Support of Brown & Williamson Tobacco Corporation's Motion to Dismiss* at 5. It was in response to growing public concern about

---

[2] Bugler and Kite products, in fact, do not contain the warning on their labels. The exception to this, which is irrelevant to this cause of action, can be found on some Bugler loose tobacco packaging which contains a warning label under California law.

the dangers associated with cigarette smoking that Congress enacted the FCLAA in 1965.[3]

The present version of the statute explains that the purpose of the FCLAA is

> to establish a comprehensive program to deal with cigarette
> labeling and advertising with respect to any relationship
> between smoking and health, whereby–
> (1) the public may be adequately informed about any adverse
> health effects of cigarette smoking by inclusion of warning
> notices on each package of cigarettes and in each
> advertisement of cigarettes; and
> (2) commerce and the national economy may be (A) protected
> to the maximum extent consistent with this declared policy and
> (B) not impeded by diverse, nonuniform, and confusing
> cigarette labeling and advertising regulations with respect to
> any relationship between smoking and health.

15 U.S.C. § 1331. To carry out this purpose, and as indicated *supra*, the FCLAA requires

cigarette manufacturers to affix the Surgeon General's Warning to every cigarette package

manufactured, imported or packaged for sale or distribution in the United States. *See* 15

U.S.C. § 1333.

The statute also contains an express preemption clause, which the defendant argues

should serve to bar plaintiff's state law claims. The relevant portion of the statute provides:

> (a) No statement relating to smoking and health, other than the
> statement required by section 1333 of this title, shall be
> required on any cigarette package.
> (b) No requirement or prohibition based on smoking and
> health shall be imposed under State law with respect to the
> advertising or promotion of any cigarettes the packages of

---

[3] The FCLAA was amended in 1969 by the Public Health Cigarette Smoking Act of 1969, Pub. L. 91-222, 84 Stat. 87, *as amended*, 15 U.S.C. §§ 1331-1340. The 1969 Act strengthened the warning label requirements, banned cigarette advertising on radio and television, and amended the FCLAA's preemption provision. Congress further amended the statute in 1984 by enacting the Comprehensive Smoking Education Act, Pub. L. 98-474, 98 Stat. 2201, codified at 15 U.S.C. §§ 1331-1341. The 1984 Act again changed the warning label and extended the warning requirement to cigarette advertisements, but did not alter the preemption provision of its predecessor 1969 Act.

> which are labeled in conformity with the provisions of this
> chapter.

15 U.S.C. § 1334.

The defendant offers numerous lower court decisions (most of which are unpublished dispositions) in support of its contention that the plaintiff's state law claims concerning loose tobacco products are preempted by the FCLAA. *See, e.g., Palms v. Brown & Williamson Tobacco Corp.*, No. CV-97-D-114-N, slip op. at 2 (M.D. Ala., Apr. 7, 1997); *Karmasu v. Brown & Williamson Tobacco Corp.*, No. C-1-94-385, slip op. at 2 (S.D. Ohio Mar. 22, 1995); *Herndon v. Brown & Williamson Tobacco Corp.*, 1993 WL 475530 (W.D. Mich. 1993); *Hardin v. Brown & Williamson Tobacco Corp.*, 1988 WL 288976 (W.D. Mich. 1988).

In addition to the many non-binding cases cited, the defendant bases its preemption argument on *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992), where the Supreme Court first examined the preemptive scope of the FCLAA. In *Cipollone*, the son of a deceased smoker sought recovery under various common law theories against the manufacturers of cigarettes his mother smoked for many years. *Cipollone*, 505 U.S. at 508. The manufacturers defended that the 1965 and 1969 Acts preempted the plaintiff's claims. *Id.* at 510. The Court held the 1965 Act preempted none of the plaintiff's claims. *Id.* at 530. However, a plurality of justices held the 1969 Act preempted:

> claims based on failure to warn and the neutralization of
> federally mandated warnings to the extent that those claims
> rely on omissions or inclusions in [the manufacturers']
> advertising or promotions; the 1969 Act does not pre-empt

6

> [plaintiff's] claims based on express warranty, intentional fraud
> and misrepresentation, or conspiracy.

505 U.S. at 530-31, 112 S. Ct. at 2625.

In reaching these conclusions, the *Cipollone* Court began by stating the general

preemption principles. The "ultimate touchstone" of preemption analysis is the purpose of

Congress. *Cipollone*, 505 U.S. at 516, 112 S. Ct. at 2618 (internal quotations omitted). This

legislative intent may be

> explicitly stated in the statute's language or implicitly
> contained in its structure and purpose. In the absence of an
> express congressional command, state law is pre-empted if
> that law actually conflicts with federal law, or if federal law so
> thoroughly occupies a legislative field as to make reasonable
> the inference that Congress left no room for the States to
> supplement it.

*Id.* (internal quotations and citations omitted).

The Court then explained that, "we must fairly but--in light of the strong presumption

against pre-emption--narrowly construe the precise language of § 5(b) and we must look

to each of petitioner's common law claims to determine whether it is in fact pre-empted."

505 U.S. at 523, 112 S. Ct. at 2621. The "central inquiry," according to the Court, was

"whether the legal duty that is the predicate of the common law damages action constitutes

a 'requirement based on smoking and health . . . imposed under state law with respect to

advertising or promotion[.]' " *Id.* at 523-24, 112 S. Ct. at 2621 (*quoting* 15 U.S.C. § 1334).

Applying the *Cipollone* line of analysis, this court first must examine the FCLAA's

express preemption provision, 15 U.S.C. § 1334. Without question, Mr. Toole's claims are

not expressly preempted by the FCLAA. The preemption clause applies only to "cigarettes

7

. . . labeled in conformity with the provisions" of the statute. *Id.* For purposes of the FCLAA, loose tobacco products are not cigarettes. In fact, the court finds it rather disingenuous for the defendant to argue in this case that its Bugler and Kite tobacco products fall within the FCLAA's definition of cigarettes for purposes of preemption but *not* for purposes of labeling. The defendant admits that its loose tobacco products need not carry the warnings prescribed by the FCLAA because these products are not cigarettes as defined by the statute. *See Memorandum Brief in Support of Brown & Williamson Tobacco Corporation's Motion to Dismiss* at 2-5. The court concludes, however, that there is no reason why the defendant should be entitled, despite the plain language of the statute, to have its cake and eat it, too. *See Varga v. Brown & Williamson Tobacco Corp.*, No. G88-568, 1988 WL 288977, at * 3 (W.D. Mich. Nov. 7, 1988) (holding that state law claims concerning Bugler and Kite loose tobacco products are not preempted by the FCLAA because "[e]ither defendant's product falls within the definition of cigarette employed by the statute, in which case both the warning requirements of § 1333 and the protections of § 1334 apply to it, or the product does not, in which case neither section applies"). Accordingly, the court finds that the plaintiff's state law failure to warn claims are not expressly preempted by the FCLAA.

This court's conclusion that the express preemption clause in the FCLAA does not preempt plaintiff's state law claims does not, however, end the inquiry. In *Cipollone*, the Supreme Court suggested that a Congressional decision to include an explicit preemption provision in legislation forecloses a finding of implied preemption from that legislation, so long as the provision "provides a reliable indicium of congressional intent with respect to

8

state authority." *Cipollone*, 505 U.S. at 517.  Some three years later, however, in *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288-90, 115 S. Ct. 1483, 1488, 131 L. Ed. 2d 385 (1995), the Court disagreed with that suggestion and proceeded to address the merits of the defendants' *implied* preemption argument. The *Myrick* Court explained that, "[a]t best, *Cipollone* supports an inference that an express pre-emption clause forecloses implied preemption; it does not establish a rule." *Id.* As noted *supra*, a number of lower courts have read into the FCLAA an implied preemption doctrine as to loose tobacco products. However, nothing in the legislative history or in the case law interpreting the statute requires this court to find that state law claims relating to non-cigarette tobacco products are preempted by section 1334.

The court simply cannot find the plaintiff's state law claims--to the extent they can be construed as state law claims--at issue in this case preempted by federal law in the absence of clear and unambiguous evidence that Congress intended that result. *See Cipollone*, 505 U.S. at 516.  The Supreme Court has consistently described such a reluctance to infer preemption in ambiguous cases as a "presumption against the pre-emption of state police power regulations." *Id.* at 518; *see also Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984).  In fact, many of the cases in which the Court has invoked such a presumption against displacement of state law have involved implied preemption. *See, e.g., Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S. Ct. 2114, 2129, 68 L. Ed. 2d 576 (1981) (stating that "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law"); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 146-152, 83 S. Ct. 1210, 1219-1222, 10 L. Ed.

9

2d 248 (1963) (stating that "we are not to conclude that Congress legislated the ouster of this [state] statute . . . in the absence of an unambiguous congressional mandate to that effect"); *cf. Bethlehem Steel Co. v. New York State Labor Relations Bd.*, 330 U.S. 767, 780, 67 S. Ct. 1026, 1033, 91 L. Ed. 1234 (1947) (stating that "[a]ny indulgence in construction should be in favor of the States, because Congress can speak with drastic clarity whenever it chooses to assure full federal authority, completely displacing the States").

Because nothing in the text of the FCLAA or its legislative history exists to rebut the strong presumption against preemption, the court concludes that the plaintiff's state law claims at issue in this case are not preempted by the statute.

### 3.   **Duty to Warn Under State Law.**

In his complaint, the plaintiff only generally avers that the defendant's failure to label the Bugler and Kite tobacco packages with warnings violates the law. Assuming the plaintiff intended to plead a failure-to-warn claim under state law, the defendant argues that such a claim should be dismissed because Alabama law does not impose a duty to warn of risks associated with tobacco use since any such risks are commonly known. *See Memorandum Brief in Support of Brown & Williamson Tobacco Corporation's Motion to Dismiss* at 6-9.

In *Casrell v. Altec Industries, Inc.*, 335 So. 2d 128 (Ala. 1976) and *Atkins v. American Motors Corporation*, 335 So. 2d 134 (Ala. 1976), the Alabama Supreme Court adopted section 402A of the Restatement of Torts (Second) and announced the Alabama Extended Manufacturers Liability Doctrine ("AEMLD"), establishing a form of products liability law in Alabama. Under the AEMLD, a manufacturer is liable for injuries caused by its product

10

if that product is defective or unreasonably dangerous. *Miller v. Rand McNally & Co.*, 595 So. 2d 1367 (Ala. 1992). Thus, under the AEMLD, the manufacturer's duty is "the duty to design and manufacture a product that is reasonably safe for its intended purpose and use." *Townsend v. General Motors Corp.*, 642 So. 2d 411, 415 (Ala. 1994).

The threshold issue here is whether the Kite and Bugler loose tobacco products are unreasonably dangerous. Unreasonably dangerous has been held to mean "not fit for its intended purpose," or not meeting the "reasonable expectation of the ordinary consumer as to safety." *Goree v. Winnebago Indus., Inc.*, 958 F.2d 1537 (11th Cir. 1992) (applying Alabama's AEMLD doctrine). In *Casrell*, the Alabama Supreme Court created a "consumer expectation" test of whether a product is unreasonably dangerous:

> The product either is or is not "unreasonably dangerous" to a person who should be expected to use or be exposed to it. If it is, it makes no difference whether it is dangerous by design or defect. The important factor is whether it is safe or dangerous when the product is used as it was intended to be used. However, *danger may be obviated by an adequate warning.* Comment i of § 402A of the Restatement of Torts 2d states: "The Article sold *must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it with the ordinary knowledge common to the community as to its characteristics.*"

*Casrell,* 335 So. 2d at 133 (citation omitted) (emphasis added). Without question, the federally mandated warning on packages of cigarettes for the last thirty years has adequately warned the public of the dangers of tobacco smoking. Moreover, no product better fits the section of comment i quoted in *Casrell*, since the dangers of tobacco have been "ordinary knowledge common to the community" for many years. *See Report of the Task Force on Tobacco Litigation,* 27 Cumb. L. Rev. 575, 612 (1997); *cf. Entrekin v. Atlantic*

11

*Richfield Co.*, 519 So. 2d 447, 450 (Ala. 1987) (applying the AEMLD and stating that "[t]he use of certain products is so firmly grounded in common sense as to require no specific instructions or warnings").

Holding that a failure to warn claim was not actionable under state law because the risks of smoking Bugler and Kite loose tobacco were "obvious to all," one court explained:

> No reasonable person could argue that the risks associated with the use of any tobacco product were not "obvious" in 1986, when plaintiff allegedly began using defendant's product. In addition to the warnings placed on most tobacco products, there have been numerous public statements by the Surgeon General and by other persons informing the public of these risks. The Court may take judicial notice of the fact that most, if not all, American citizens are well-informed of the dangers associated with tobacco smoking.

*Varga v. Brown & Williamson Tobacco Corp.*, No. G88-568, 1988 WL 288977, at * 3 (W.D. Mich. Nov. 7, 1988); *see also Roysdon v. R.J. Reynolds Tobacco Co.*, 849 F.2d 230, 236 (6th Cir. 1988) (upholding district court's taking judicial notice that "tobacco has been used for over 400 years and . . . its characteristics have been fully explored. Knowledge that cigarette smoking is harmful to health is widespread and can be considered part of the common knowledge of the community"); *Todd v. Brown & Williamson Tobacco Corp.*, 924 F. Supp. 59, 62-63 (W.D. La. 1996) (holding that, under Louisiana law, plaintiff failed to state failure to warn claim because the "dangers of tobacco use are obvious" and "[t]hat one tobacco product is loose and rolled into cigarettes by the consumer while another is purchased already rolled is a distinction without a difference").

In the present action, Mr. Toole alleges that he has been a smoker of the defendant's Bugler and Kite loose tobacco products since 1990. *Complaint ¶ 5.* If the dangers

associated with the use of tobacco products were obvious in 1986 as determined by the court in *Varga*, such dangers were certainly obvious in 1990 when Mr. Toole began using them. As a result, Mr. Toole cannot allege a set of facts establishing a duty to warn on the part of the defendant. The failure to warn claims, to the extent they are predicated on state law, will therefore be dismissed.

### B.   Constitutional Claims.

In his civil complaint, Mr. Toole alleges "that Defendants [sic] violated Plaintiffs [sic] Constitutional Rights pursuant to the United States Constitution and the Alabama Constitution 1901." *Complaint* ¶ 16. Because Mr. Toole failed to allege any specific claim under either Constitution, the defendant, in its initial brief, assumed arguendo that plaintiff may have intended to allege a Section 1983 claim because, "[i]n the past, plaintiffs have alleged [such] claims against tobacco companies." *Memorandum Brief in Support of Brown & Williamson Tobacco Corporation's Motion to Dismiss* at 10. In his responsive submission, Mr. Toole argued only that ". . . due to the fact Plaintiff is pursuing relief from basic State and Federal law, Plaintiff elects to present his constitutional argument at trial." *Plaintiff's Response to Defendant's Motion to Dismiss* at 5.

In a later submission to the court, Mr. Toole specifically responded to the defendant's assumption that a Section 1983 claim was intended. Mr. Toole argued that he "did not file nor attempt to file a claim under 42 U.S.C. § 1983, because Brown & Williamson are [sic] not agents for the State." *Plaintiff Response to Defendant's Second Motion to Dismiss* [sic] at 7. In this submission, the plaintiff attempts to clarify by stating:

13

> Plaintiff is an incarcerated inmate in the Alabama Prison
> System, which is located in these United States, and Plaintiff
> may have lost some of his Constitutional Rights, but "did not"
> lose his citizenship, and therefore, like unincarcerated citizens,
> Plaintiff has a Constitutional Right to information of a product
> which may be a health risk to the Plaintiff, or may be addictive
> in using said product which Plaintiff purchases from the prison
> canteen.

*Id.* at 7-8.

Upon due consideration of the plaintiff's complaint, together with his submissions

to the court, the court finds that Mr. Toole has failed to state a Constitutional claim upon

which relief can be granted.  Fed. R. Civ. P. 8(a)(2); *Conley*, 355 U.S. at 45-46.  The court

has construed the complaint liberally, as it is required to do.  *Haines v. Kerner*, 404 U.S. 519

(1972).  Even so, the facts of this matter and the basis relied on by Mr. Toole for relief

under the U.S. Constitution or the Alabama Constitution cannot be ascertained with any

clarity.  Plaintiff has failed to allege any facts that Brown & Williamson, the only defendant

in this action, has violated his constitutional rights.  Hence, the Constitutional claims fail to

state a cause of action upon which relief can be granted.  The defendant's motion to

dismiss will be granted with respect to these claims.

## V.    Conclusion.

Accordingly, Brown & Williamson's motion to dismiss will be granted.  The court will

enter an appropriate order in conformity with this memorandum of opinion.

Done, this ____8th____ of October, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

14